## MIDLAND VALLEY R. CO. *et al.* v. STATE *et al.*

No. 4261.    Opinion Filed June 10, 1913.

(133 Pac. 27.)

1.   CORPORATIONS—Corporation Commission—Findings of Fact—Review. Where the findings of fact of the Commission are based upon any competent evidence, the action (section 22, art. 9, Williams' Ann. Const. Okla.) appealed from must be regarded as prima facie just, reasonable, and correct; but when any finding is not supported by any evidence, and there is strong evidence to the contrary, this presumption does not apply.

2.   CARRIERS—Regulation by Corporation Commission—Storage of Baggage—Sufficiency of Evidence. Record examined, and held to disclose no competent evidence tending to show that the order appealed from is just, reasonable, and correct.

(Syllabus by the Court.)

*Appeal from the Corporation Commission.*

A final order was made by the Corporation Commission regulating the storage charges to be made by the Midland Valley Railroad Company and others, and the railroad companies appeal. Reversed.

*Edgar A. de Meules, Cottingham & Bledsoe, C. O. Blake, C. L. Jackson, R. A. Kleinschmidt, E. R. Jones, C. E. Warner,* and *Pryor & Miles,* for appellants.

*Chas. West,* Atty. Gen., and *Chas. L. Moore,* Asst. Atty. Gen., for the State.

KANE, J. This is an appeal from a final order of the Corporation Commission, directed to the appellants, wherein certain rules and regulations governing the charges which may be assessed for storage of baggage after the expiration of a certain free time are promulgated. The order provides that baggage arriving at a station shall be stored 24 hours after arrival free of charge, exclusive of Sundays and legal holidays, which shall be free time; that for each additional 24 hours, or fraction thereof, for the next succeeding ten days, a charge of ten cents per day may be collected, and for the succeeding twenty days a charge of five cents per day may be collected, and for all time after the expiration of 30 days five cents per day may be collected, observing a maximum of 50 cents per month after the first 30 days. In computing time Sundays and legal holidays will be excluded.

This order was promulgated to supplant a rule by the railway companies, which provides that the first 24 hours shall be free; that for the second 24 hours a charge of 25 cents shall be made, and for each succeeding 24 hours, or fraction thereof, a charge of ten cents shall be made, provided that for baggage received at any time Saturday and claimed before the same hour of the succeeding Monday, or when received any hour of Sunday and claimed before midnight Monday, no charge shall be made. Legal holidays will be treated the same as Sundays, but no deduction will be made for Sundays or legal holidays after storage has commenced to run.

The contentions of the appellants are (1) that the order of the Corporation Commission is unreasonable and unjust, and (2) that there is no testimony whatsoever tending to sup-

port the order complained of, or that the order it was intended to supplant was unjust or unreasonable.

It has several times been held by this court that all appealable orders of the Corporation Commission must be supported by some evidence, which must be made a part of the record on appeal, and that where the findings of fact of the Commission are based upon any competent evidence the action (section 22, art. 9, Williams' Ann. Const. Okla.) appealed from must be regarded as *prima facie* just, reasonable, and correct; but when any finding is not supported by any evidence, and there is strong evidence to the contrary, this presumption does not apply. *C., R. I. & P. Ry. Co. et al. v. State et al.*, 24 Okla. 370, 103 Pac. 617, 24 L. R. A. (N. S.) 393; *Atchison, T. & S. F. Ry. Co. et al. v. State,* 27 Okla. 820, 117 Pac. 330; *Pioneer Telegraph & Telephone Co. v. Westenhaver et al.,* 29 Okla. 429, 118 Pac. 354, 38 L. R. A. (N. S.) 1209; *Okla. Ry. Co. v. State,* 35 Okla. 463, 130 Pac. 151.

There was only one witness on behalf of the state, and we are unable to gather from his evidence or from the record, any circumstance tending to show that the rule which had generally been enforced by the railway companies for something like 25 years was unreasonable, or that the rule promulgated by the Corporation Commission covering the same subject was reasonable. On the other hand, Mr. Price, general baggage agent for the Frisco, Mr. Lee, general baggage agent for the Rock Island, Mr. Walsh, general baggage agent for the Santa Fe, and Mr. Kellond, general baggage agent for the "Katy," all experienced railroad men in their line, testified to the effect that long experience shows that the old rule of railway companies efficiently cured the evils connected with the handling of baggage for which it was promulgated; that it is a reasonable regulation, and that there is no complaint against it on the part of the traveling public; that the rule promulgated by the Commission would tend to restore the confusion in the current handling of baggage which

the old rule obviated, and would otherwise injuriously affect the great bulk of the traveling public, as well as the railway companies. The testimony of Mr. Walsh is fairly illustrative of it all. He testifies as follows:

"I am general baggage agent for the Atchison, Topeka & Santa Fe. Many years ago, perhaps, 25, we had no storage on baggage at all; the result was that our baggage-rooms were filled with baggage indefinitely. Pieces were being stolen, and we couldn't locate them, and it was absolutely necessary for us to establish some sort of storage regulations in order to clear out the baggagerooms and this was adopted: The first 24 hours free; following that, 25 cents for the next day, and ten cents for each additional day. Afterwards it was deemed proper that we should allow Sundays and legal holidays, not count them, so the present law is, or the present rule is, that baggage that comes in on Saturday is held free of storage until the corresponding hour on Monday following. Baggage that comes in on Sunday is held free of storage until midnight Monday. That gives the passenger all day Monday to take his baggage away. If it comes in on Saturday, it gives him all day Saturday from the time it comes in up to the corresponding hour on Monday, and we thought that was a fair and reasonable proposition. Now it is my idea that ninety-eight per cent of the baggage we carry is claimed within the 24 hours, or within the free time allowed. If it is not called for on Sunday, it is called for on Monday, and there is very little baggage subject to storage charges compared to what we carry. That, I think, seems to be reasonable. I haven't heard any complaint. The people generally are prompt in taking out baggage to avoid storage charges. The average traveler, when he completes his journey, wants his baggage. The ordinary passenger, when his journey is terminated, and the railroad have piled away everything and are ready to deliver their baggage, he is ready to take it. That is the general rule. Our road runs through several states, and that rule applies to those states that we run through. At the end of 30 days, agents have instructions to send their baggage into the unclaimed room. That is done because where it lies at small stations it is liable to be pilfered, the windows are liable to be broken, and we have time and again had to pay for baggage that was laid over there, when the

baggage had remained there. If a trunk was a good look-
ing, they would get possession of it, and I understand a
few years ago there was two men and two women arrested
in Ft. Smith with 34 empty trunks and valises on their
hands which they got by means of this switching checks. It
is not a difficult matter to steal a check from a station. Those
are things we are up against in carrying baggage over. The
ordinary citizen of Oklahoma, not speaking of commercial
men going from one town to another, universally gets his
baggage out as soon as he arrives. I have never had any com-
plaint from citizens of Oklahoma to the fact that the free
storage limit was too short. I have heard of no trouble
of that kind. Ordinary passengers will call and move it if
he has to pay storage. It is not often that he has to do it.
It is not once in a hundred times that a passenger has to
pay storage."

Mr. Kellond testified, in part, as follows:

"The railroad company's business is that of a common car-
rier, and not of a warehouse or storehouse man. If the
rate is reduced, so that it is profitable for a traveler to leave
his baggage, he will do that rather than transport it by
wagon to the warehouse or hotel, and our stations and bag-
gage-rooms will be congested, and that necessarily will interfere
with the proper handling of business and baggage that is
moving promptly, and when we delay a piece of baggage
in handling we are called up to pay damages for that. It
ought to be fair that we should collect a reasonable charge,
where the owner of the baggage delays in taking it out him-
self; that applies to personal baggage, as well as drummers'
trunks. I have a claim pending now. A moving picture man
right here in this town, claimed that he and his wife did not
have any clothes to wear for two or three days; they are
charging me for delay. The wife had to buy some new
petticoats and shirt waists and things; but they kept jumping
ahead of their baggage. The reduction of the rates for the
promulgation of the order, as stated in this proposed order,
would result in the congestion of baggage at stations, and
result in the privilege of leaving baggage there being abused.
That would be the almost entire effect of the order, just
cover up our stations. We would not lose much money, be-
cause we do not make much money. In other words, the charge
is there to move the baggage, so that we can use our bag-

gage-rooms for current business. Our charge for storage is uniform. There is just·that slight modification in Texas that they exempt the Sundays and legal holidays; but it is 25 and ten universally in all the states our lines run through. They give 24 hours in Texas free; second 24 hours or fraction thereof, 25 cents; for each succeeding 24 hours or fraction thereof, ten cents; Sundays and holidays will be considered as additional free time."

From the foregoing testimony it is apparent that the railroad companies are not complaining so much of the possible loss of revenue as they are that the final order of the Commission strikes down arbitrarily a rule and regulation which has been in force by the railroads of this country for 25 years, and one which experience has taught them is necessary and salutary in the handling of their current baggage business, Manifestly, the revenue feature of the rule is insignificant, the purpose being to facilitate the handling of the current baggage business, and the less revenue there is derived from such charges the greater the carriers are benefited and their facilities increased for serving the public.

Rules of this kind which have stood the test of time and have been found effective in facilitating any branch of the business of a common carrier should not be disturbed, unless it is clearly shown that they are unreasonable. It is the duty of the railroad companies to so conduct their business that their patrons shall be accorded the fullest and freest use of their equipment and facilities, and rules adopted by the companies for that purpose ought to be viewed with favor, so long as they are reasonable and subject no one to disadvantage. *Peale, Peacock & Kerr v. Central R. Co. of New Jersey,* 18 Interst. Com. R. 25.

A railroad baggage-room and a public storage warehouse are buildings whose business and uses are wholly dissimilar. The former is planned and built to accommodate the current business of a railroad when expeditiously handled, and affords no facilities for storage during long periods of time. The storage warehouse is expressly designed for storage for hire.

State ex rel. v. Oklahoma City.

Storage charges after baggage remains in a baggage-room beyond a reasonable time are assessed, not especially for gain, but in order to enable the carrier to clear its baggage-room to the end that current business may be more expeditiously handled. That this object may be effected, the railway companies may impose a storage rate higher than that fixed by the ordinary public storage warehouse. If this could not be done, there would be no inducement for the removal of baggage within reasonable time. Another fact which renders storage in a railway depot expensive and risky is that, owing to the daily movements of travel into and out of the same depot, goods in storage are subject to the risk of damage, which often results in the loss to the railroad as well as to the owner of the baggage.

We are therefore of the opinion that, as there is absolutely no evidence tending to establish the reasonableness of the order entered by the Corporation Commission, or that the rule promulgated by the railroad companies is unreasonable, or that it subjects any one to disadvantage, the order of the Corporation Commission must be reversed. It is so ordered.

All the Justices concur.